**Yluminada MOJICA and Julio Acevedo, as legal representatives of Joshua Acevedo, Petitioners,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 07–501V.

United States Court of Federal Claims.

Nov. 28, 2007.

---

Mindy M. Roth, Britcher, Leone & Roth, L.L.C., Glen Rock, New Jersey, for plaintiff.

Heather L. Pearlman, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for respondent. With her on the briefs were Peter D. Keisler, Assistant Attorney General, Civil Division, and Timothy P. Garren, Director, Mark W. Rogers, Deputy Director, and Catherine E. Reeves, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER [1]

LETTOW, Judge.

Yluminada Mojica and Julio Acevedo, legal representatives of Joshua Acevedo, seek review of a decision entered August 31, 2007 by a special master dismissing their petition for compensation under the National Childhood Vaccine Act of 1986, Pub.L. No. 99–660, § 311, 100 Stat. 3743, 3755 (Nov. 14, 1986) (codified as amended at 42 U.S.C. §§ 300aa–1 to –34) ("Vaccine Act"). *Acevedo v. Secretary of Health & Human Servs.*, No. 07–501V, 2007 WL 2706159 (Fed.Cl.Spec.Mstr. Aug. 31, 2007) ("Jurisdictional Decision"). The special master's dismissal was predicated upon petitioners' failure to file their petition within three years from the date of the "first symptom or manifestation of onset" of injury. *Id.* at *5 (quoting 42 U.S.C. § 300aa–

16(a)(2)). In seeking review, petitioners contend that the special master erred in refusing to invoke equitable grounds to toll the statute of limitations. Pet'rs' Mot. for Review of the Special Master's Decision ("Mot. for Review") at 5–8.

Petitioners concede that their petition for compensation was filed a few days after the 36–month period specified in the Vaccine Act. Mot. for Review at 5–6. However, to excuse this failure, they point to diligent efforts by their counsel to file the petition on time, and to a series of extraordinary mishaps by a courier service that frustrated actual filing for a critical time interval. *Id.* Although the special master concluded that their position was forestalled by a decision of the Federal Circuit, *Brice v. Secretary of Health & Human Servs.*, 240 F.3d 1367 (Fed.Cir.2001) (holding that the statutory period for bringing a claim under the Vaccine Act is jurisdictional and not subject to equitable tolling), petitioners argue that *Brice* does not foreclose equitable tolling in proper circumstances. Mot. for Review at 14–16. In addition, petitioners contend that *Brice* should be reevaluated in light of the pendency before the Supreme Court of the United States of a case raising the question whether this court's subject matter jurisdiction under jurisdictional grants that include the Tucker Act, 28 U.S.C. § 1491(a), is constrained by the statute of limitations in 28 U.S.C. § 2501. *See John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354–55 (Fed.Cir.2006), *cert. granted,* —— U.S. ——, 127 S.Ct. 2877, 167 L.Ed.2d 1151 (May 29, 2007).

Following briefing in this case, a hearing was held on October 29, 2007.

## BACKGROUND

In their petition, Ms. Mojica and Mr. Acevedo allege that on June 28, 2004, their son, Joshua Acevedo, received a routine DTaP vaccination and a routine Prevnar vaccination. Pet. ¶ 18. That night, he suffered episodes of shaking and began to run a fever.

---

1. In accord with the *Rules of the Court of Federal Claims* ("RCFC"), Appendix B ("Vaccine Rules"), Rule 18(b), this opinion and order was initially filed under seal. Each party was afforded fourteen days from the date of sealed filing to object to the public disclosure of any information supplied by that party. The parties promptly advised that no redactions were necessary, and thus the entire decision is being made public.

*Id.* ¶ 19. By morning, he exhibited "shaking of his upper extremities" that was accompanied by "drooling." *Id.* During the event, Joshua's "eyes deviated" to his left side. *Id.* He was taken by ambulance to Trinitas Hospital in Elizabeth, New Jersey, *id.* ¶ 20, where he experienced "intermittent startling attacks," *id.* ¶ 21, and was transferred to the pediatric intensive care unit at St. Peter's University Hospital in New Brunswick, New Jersey, where he remained until July 2, 2004. *Id.* ¶ 21, 26. A pediatric neurologist who evaluated Joshua at St. Peter's University Hospital concluded that Joshua had suffered "encephalitis," either "infectious" or "post[-]vaccine." *Id.* ¶ 23. By November 2004, Joshua displayed "increased muscle tone and [some] developmental delay," *id.* ¶¶ 34–36, such that the same pediatric neurologist recommended adoption of an "[e]arly [i]ntervention [p]rogram for physical therapy and occupational therapy." *Id.* ¶ 36.

After seeking the advice of an attorney, Ms. Mojica and Mr. Acevedo were referred to Mindy Michaels Roth, an attorney in New Jersey who is a member of the bar of this court and possesses considerable experience with vaccine claims. Affidavit of Mindy Michaels Roth (June 25, 2007) ("June Roth Aff."), ¶¶ 2, 4. Ms. Roth prepared a petition for compensation even though she lacked all documents required by 42 U.S.C. § 300aa–11(c)(1) & (2) and by Vaccine Rule 2(e), because the statute of limitations was due to lapse on June 28, 2007. *Id.* ¶ 3, 5, 7. That date was 36 months after the first symptom or manifestation of the onset of injury. *See* 42 U.S.C. § 300aa–16(a)(2) ("No petition may be filed for compensation under the Program for [a vaccine-related] injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury."); *see also Markovich v. Secretary of Health & Human Servs.,* 477 F.3d 1353, 1358 (Fed.Cir.2007) (addressing the triggering date for the running of the statute of limitations and citing *Brice,* 240 F.3d at 1373).

On June 25, 2007, Ms. Roth tendered the petition to Federal Express for overnight delivery to the clerk of this court. *See* Affidavit of Mindy Michaels Roth (June 29, 2007) ("Second June Roth Aff."), ¶ 2, Exs. A, B. Besides the petition, the properly addressed package contained associated documents and a $250.00 check for the filing fee. *Id.* ¶ 2. The airbill designated that the package was for delivery via "[p]riority [o]vernight" shipping for arrival on the "[n]ext business morning." *Id.,* Ex. A at 1. It was thus due to arrive on the morning of June 25, 2007. However, Federal Express lost the package. *Id.,* Ex. B at 1.

Ms. Roth timely served a copy of the petition upon the Secretary "via Certified Mail/R[eturn]R[eceipt]R[equested]." Affidavit of Mindy Michaels Roth (July 20, 2007) ("July Roth Aff.") ¶¶ 3–4. The United States Postal Service delivered the service copy to the Secretary of Health and Human Services ("Secretary") on June 28, 2007. *See* July Roth Aff. ¶ 4, Ex. C; *see also* 42 U.S.C. § 300aa–11(a)(1) (mandating service of a petition upon the Secretary); Vaccine Rule 2(c) (same).

Although a tracking inquiry by Ms. Roth's assistant had shown that the package had arrived at Federal Express's "dest[ination] sort facility" in Dulles, VA, at 5:15 a.m., on June 26, 2007, July Roth Aff., Ex. E at 1, on June 29, 2007, Federal Express informed Ms. Roth that its records indicated that the package containing the petition had "arrived in [Federal Express's] Newark, NJ, sorting facility on June 25[, 2007] at 8:59 p.m.," and that Federal Express was "unable to locate" the package and considered the package "missing." Second June Roth Aff., Ex. B at 1.

Ms. Roth then prepared a second petition, accompanied by her second June affidavit explaining that she had timely submitted the first package to Federal Express, and she mailed the second petition with the affidavit via Federal Express to the clerk of this court during the late afternoon on June 29, 2007. *See* July Roth Aff., Exs. F–G. Ms. Roth again marked the airbill for "[p]riority [o]vernight" shipping with delivery slated for Monday, July 2, 2007. *Id.,* Ex. F at 1. Federal Express failed to deliver the second package to the clerk on July 2, 2007, but that package was delivered the next day, on July 3, 2007, at

10:17 a.m. Affidavit of Mindy Michaels Roth (July 9, 2007) ("First July Roth Aff."), Ex. A. The court processed the second petition as a new case with a filing date of July 3, 2007.

Federal Express finally delivered the first package to the court on July 13, 2007, and the clerk of the court also processed that petition as a new case with a filing date of July 13, 2007. The second-filed case thereafter was dismissed by the special master as a duplicate of the case filed on July 3, 2007. *See* Jurisdictional Decision, 2007 WL 2706159, at *3.

The government moved to dismiss the first-filed petition as untimely due to the late delivery. The special master concluded that the petition was untimely and refused to apply the doctrine of equitable tolling, relying upon the Federal Circuit's holding in *Brice*, 240 F.3d 1367, that equitable tolling is not available for claims arising under the Vaccine Act. Jurisdictional Decision, 2007 WL 2706159, at *4–5. Noting that the "Federal Circuit's prohibition of the doctrine of equitable tolling in [Vaccine] cases appears complete and inflexible," the special master concluded that the statute of limitations in 42 U.S.C. § 300aa–16(a)(2) barred consideration of the petition. *Id.* at *4.

## STANDARD FOR REVIEW

The Vaccine Act authorizes this court to review decisions by special masters in vaccine cases, and to "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law." 42 U.S.C. § 300aa–12(e)(2)(B). Accordingly, the Vaccine Act requires this court to analyze conclusions of law by a special master to determine whether they are "not in accordance with law." *Markovich*, 477 F.3d at 1356; *Althen v. Secretary of Health & Human Servs.*, 418 F.3d 1274, 1277–78 (Fed.Cir.2005). Factual findings by a special master may be set aside if they are found to be arbitrary or capricious or if a special master has abused his or her discretion in making such findings. *See Hines v. Secretary of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed.Cir.1991).

## ANALYSIS

### A. *Equitable Tolling in Light of* Brockamp *and* Brice

In *Brice*, the Federal Circuit considered the question of "whether equitable tolling is available for claims arising under [S]ection 16(a)(2) of the [Vaccine] Act, which applies to vaccines administered after the effective date of the Act ('post-Act cases')." 240 F.3d at 1367–68. The court held that "equitable tolling is not available in such cases." *Id.* at 1368.

The holding in *Brice* was based upon on the premise that in waiving sovereign immunity the Vaccine Act also sets jurisdictional limitations on actions against the government. The Federal Circuit emphasized that the Act's statute of limitations must be strictly and narrowly construed because it is "a condition on the waiver of sovereign immunity by the United States, and courts should be careful not to interpret a waiver in a manner that would extend the waiver beyond that which Congress intended." *Brice*, 240 F.3d at 1370 (internal quotes omitted). In reaching its conclusion that the limitations of Section 16(a)(2) of the Vaccine Act are jurisdictional, such that trial courts could not apply equitable tolling, the Federal Circuit focused on two Supreme Court decisions, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), and *United States v. Brockamp*, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997). In *Irwin*, the Supreme Court addressed whether the time limits for filing an action in district court alleging a discrimination claim after receipt of a right-to-sue letter from the Equal Employment Opportunity Commission constituted an absolute jurisdictional limit or were subject to equitable tolling. 498 U.S. at 91–92, 111 S.Ct. 453. The Court held that equitable tolling was potentially available, although not adequately supported in the particular case before it. *Id.* at 95–96, 111 S.Ct. 453. The Court in *Irwin* adopted the broad rationale that following a congressional waiver of sovereign immunity, the "same rebuttable presumption of equitable tolling applicable to suits against private defendants should

also apply to suits against the United States." *Irwin*, 498 U.S. at 95–96, 111 S.Ct. 453 (quoted in *Brice*, 240 F.3d at 1370). Contrastingly, the Federal Circuit in *Brice* viewed *Brockamp* as a counterpoint to, and limitation on, the broad holding in *Irwin*. *Brockamp* was a tax case in which the Supreme Court refused to apply equitable tolling to allow late-filed suits for refunds. 519 U.S. at 354, 117 S.Ct. 849. The Federal Circuit in *Brice* considered that *Brockamp* "demonstrates that it is possible for the government to rebut *Irwin's* presumption of equitable tolling and also creates uncertainty exactly as to when equitable tolling is permissible." *Brice*, 240 F.3d at 1370. Relying on *Brockamp*, the court of appeals in *Brice* concluded that equitable tolling was inappropriate for the statute of limitations in the Vaccine Act because "the relevant limitations statute manifested congressional intent to preclude tolling." *Id.* at 1370–71.

In reaching this result, the Federal Circuit in *Brice* examined a set of five circumstances or factors that the Supreme Court had considered in *Brockamp* as providing indicia of Congressional intent. Those circumstances related to "the statute's detail, its technical language, its multiple iterations of the limitations period in procedural and substantive form, its explicit inclusion of exceptions, and its underlying subject matter." *Brice*, 240 F.3d at 1372 (citing *Brockamp*, 519 U.S. at 350–52, 117 S.Ct. 849). The court of appeals found that "three of these factors" were not present in *Brice* because the Vaccine Act is "not particularly technical" nor does it include multiple iterations of the limitations period nor compare in administrative complexity to the income tax provisions at issue in *Brockamp*. *Id.* at 1372–73. Nevertheless, "the remaining two factors [were] decisive." *Id.* at 1373. The court was persuaded that there was "good reason to believe that Congress did not want the equitable tolling doctrine to apply" because the Vaccine Act includes a specific exception from the limitations period for a petition improperly filed in a state or federal court. *Brice*, 240 F.3d at 1370 (quoting *Brockamp*, 519

U.S. at 350, 117 S.Ct. 849); *see* 42 U.S.C. § 300aa–11(a)(2)(B). The court also concluded that the limitations period is "part of a detailed statutory scheme which includes other strict deadlines." *Brice*, 240 F.3d at 1373.

Judge Newman dissented in *Brice*, opining that "courts are not precluded from evaluating the reason for the delay or from providing equitable relief when justice demands." *Brice*, 240 F.3d at 1374 (Newman, J., dissenting). She characterized the majority's holding as "neither a necessary interpretation of the Vaccine Act, nor a tolerable one." *Id.* In Judge Newman's view, the Vaccine Act is "a case-specific system of individualized equities, meeting the criteria discussed in *Brockamp* as subject to equitable tolling." *Id.* at 1375. Under such an interpretation, the Act does not restrict the power of federal courts to hold that the statute of limitations is tolled under circumstances not inconsistent with the Act's purpose; rather, "[t]he judicial prerogative, indeed our obligation, is to provide access to equitable tolling when the circumstances warrant." *Id.* at 1374. Judge Newman concluded that "[t]he just solution to the rare situation of delay beyond the statutory period ... is not to deny all remedy in all situations" but instead is "to view each situation with the sympathy, wisdom, and rigor appropriate to the particular case." *Id.* at 1376.

The factual discussion in the majority opinion of *Brice* does not reach the events of this case, which might illustrate the type of exceptional circumstance that Judge Newman had in mind as warranting equitable tolling. As petitioners' counsel emphasizes, this is not a situation where the due diligence of the petitioners is substantially in question, as was the case in *Brice* where Judge Newman argued against a special master's conclusion that "there [wa]s no diligence in th[at] case, much less due diligence." 240 F.3d at 1378. While the government argues that petitioners' counsel might have taken additional steps to ensure timely delivery of the petition,[2] the court concurs with the special mas-

---

2. On the morning of June 26, 2007, the day after the initial package was given to Federal Express for delivery, petitioners' counsel's assistant

checked with Federal Express's tracking service and was informed that the package had arrived at Dulles Airport. Affidavit of Mindy Michaels

ter's finding that counsel took reasonable steps to prepare and entrust the petition to a reputable third party courier, Federal Express, for timely delivery. *See* Jurisdictional Decision, 2007 WL 2706159, at *3.[3] Petitioners' counsel timely served the petition upon the Secretary, such that the defendant was not prejudiced by lack of notice. *Cf. Tiller v. Atlantic Coast R.R.,* 323 U.S. 574, 581, 65 S.Ct. 421, 89 L.Ed. 465 (1945) ("There is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it."). The government does not contend that it was prejudiced by the brief delay in filing, and thus this is not an instance where, as identified by Judge Newman, dismissal is necessary "to provide fairness to defendants who might otherwise be presented with stale claims after evidence is lost and memories faded." *Brice,* 240 F.3d at 1376 (citing *Burnett v. New York Cent. R.R.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965)).

Nevertheless, *Brice's* holding categorically bars equitable tolling in all cases involving late petitions under the Vaccine Act. *See Brice,* 240 F.3d at 1374 (holding that "equitable tolling i[s] inconsistent with the existing statutory scheme"). As Judge Newman stated in dissent, the panel majority held that the Vaccine Act "never permits equitable tolling of the period for filing a claim ... no matter how worthy the petitioner or how compelling the petition." *Id.* at 1374 (Newman, J., dissenting).

### B. *The Pendency of* John R. Sand & Gravel Company *Before the Supreme Court*

Petitioners filed a motion for this court to "reserve or stay" its decision in this case until after the Supreme Court renders its decision in *John R. Sand & Gravel Co. v. United States,* No. 06–1164, *cert. granted,* 127 S.Ct. 2877, 167 L.Ed.2d 1151 (May 29, 2007), which was argued on November 6, 2007. Pet'rs' Mot. for Stay (filed Nov. 19, 2007). The question pending before the Supreme Court on certiorari is "whether the statute of limitations in [28 U.S.C. § 2501] limits the subject matter jurisdiction of the Court of Federal Claims." *See* 127 S.Ct. 2877 (limiting review to "Question 1 presented by the petition"). Petitioners' counsel properly raises *John R. Sand & Gravel* as potentially relevant to this case because *John R. Sand & Gravel* implicitly addresses the viability of equitable tolling in many suits against the government in this court. Upon consideration of petitioners' motion however, the court concludes that the Supreme Court's decision regarding jurisdiction and equitable tolling of the limitations period generally applicable to cases brought in this court under the Tucker Act and other statutory grants of jurisdiction to this court should not affect the outcome of this particular case.

In *John R. Sand & Gravel,* the Federal Circuit followed older precedents in reaffirming that the six-year statute of limitations set forth in 28 U.S.C. § 2501 is jurisdictional in nature, requiring that suits be timely filed for this court to have subject matter jurisdiction over a cause of action. *See John R. Sand & Gravel,* 457 F.3d at 1354. If the Supreme Court concurs that Section 2501 is jurisdictional, then under the logic of the Supreme Court's recent decision in *Bowles v. Russell,* —— U.S. ——, ——, 127 S.Ct. 2360, 2366, 168 L.Ed.2d 96 (2007), this court will

---

Roth (Aug. 27, 2007) ("August Roth Aff.") ¶ 5; Hr'g Tr. 9:7 to 10:2 (Oct. 29, 2007). Petitioners' counsel later that day queried her assistant to ask whether the petition had been received by the clerk's office and was assured that "it was there." Hr'g Tr. 9:15 (Oct. 29, 2007). However, the assistant had assumed without checking that the package would be delivered as scheduled. August Roth Aff. ¶ 6. The responsibility for that error falls on petitioners' counsel. Hr'g Tr. 9:18–20 (Oct. 29, 2007).

**3.** The special master concluded that counsel's steps were diligent, given that:

[A] petitioner's attorney has limited options for delivering a petition to the Court. A petitioner's attorney may travel to Washington, D.C., to file a petition in person. The option is obviously impractical and expensive. A petitioner's attorney may retain local counsel to file a petition in person. The option—involving to an extent the duplication of effort—is also obviously impractical and expensive. Or, as with most practitioners, a petitioner's attorney may entrust a petition to a recognized delivery agent, such as the United States Postal Service, FedEx, UPS or DHL.

Jurisdictional Decision, 2007 WL 2706159, at *3.

have no authority to apply the doctrine of equitable tolling to claims arising, for example, under the Tucker Act, 28 U.S.C. § 1491(a). *See Bowles,* 127 S.Ct. at 2366 ("This court has no authority to create equitable exceptions to jurisdictional requirements."). Such a result would only strengthen by analogy the force of *Brice,* precluding equitable tolling under the Vaccine Act.

On the other hand, if the Supreme Court reverses the Federal Circuit's decision in *John R. Sand & Gravel* and holds that the statute of limitations in 28 U.S.C. § 2501 is a typical such statute, constituting an affirmative, non-jurisdictional defense, and therefore is subject to equitable tolling in appropriate cases, the petitioners in this case will nonetheless be afforded little if any help. Under *Irwin,* statutes of limitations for suits against the federal government that resemble a suit against a private party are subject to a rebuttable presumption of equitable tolling. *Irwin,* 498 U.S. at 95–96, 111 S.Ct. 453. *Brockamp* addresses the grounds for rebutting that presumption and for concluding that a statute of limitations is jurisdictional, 519 U.S. at 349–52, 117 S.Ct. 849, and there is no suggestion that *Brockamp* will be disturbed by a decision in *John R. Sand & Gravel.* Indeed, in their oral argument, the petitioners in *John R. Sand & Gravel* argued:

> [T]he way the Court has framed the issues in *Irwin* to say that there is a presumption that statutes of limitation are tollable and, therefore, are not jurisdictional in our view, tends to show that the Court wants a clear statement from Congress. The presumption language says Congress may at any time say otherwise and make a statute of limitations jurisdictional.... [I]t's very important to understand that the *Brockamp* decision did not speak in jurisdictional terms.... [I]t spoke in terms of statutory interpretation.... So *Irwin,* standing unassailed since that time, has forced the courts to look at the plain language of the statute, which is precisely what we advocate this Court does.

*John R. Sand & Gravel,* No. 06–1164, Tr. of Oral Argument at 49–50. Correspondingly, in deciding *Brice,* the Federal Circuit engaged in the process which *Brockamp* illustrates and which the petitioner in *John R. Sand & Gravel* advocates, namely, looking at the individual statute to determine whether equitable tolling is proper or instead inappropriately expands the waiver of sovereign immunity. Because the Federal Circuit has already interpreted the Vaccine Act under its understanding of *Brockamp* and that interpretation is unlikely to be undercut by *John R. Sand & Gravel,* there are no grounds for this court to stay a decision in this case pending the Supreme Court's decision in *John R. Sand & Gravel.*

This court is obliged to treat *Brice* as correctly stating the law, such that there is no possibility of equitable tolling under the Vaccine Act even in the circumstances presented by this case where counsel took reasonable steps to fulfill her obligation to file in time. This result is draconian but compelled by law.

### CONCLUSION

For the foregoing reasons, petitioners' motion for review is DENIED, and the decision of the special master rendered August 31, 2007 is AFFIRMED.

Petitioners' motion for stay pending the Supreme Court's disposition of *John R. Sand & Gravel* is DENIED.

It is so ORDERED.